NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JALONN LASSITER<br><br>            Plaintiff,<br>    v.<br><br>LYDELL B. SHERRER, et al.,<br><br>            Defendants. | Civ. Action No. 09-2979 (KSH)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

　　Pro se plaintiff Jalonn Lassiter, an inmate at Northern State Prison, filed a complaint alleging that several corrections officers assaulted him because he protested their refusal to return his previously-confiscated eyeglasses. The complaint puts forth claims for: (1) violation of plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights; (2) violation of plaintiff's rights under Article I of the New Jersey Constitution; (3) assault and battery; (4) intentional infliction of emotional distress; and (5) violation of constitutional rights by the prison nurse for failing to provide medical assistance. Plaintiff seeks a declaratory judgment affirming that his rights were violated, injunctive relief, compensatory damages, and punitive damages. Following discovery, the defendants filed this motion for summary judgment, asserting: (1) plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a); (2) the record demonstrates that plaintiff was not subject to excessive force in violation of the Eighth

1

Amendment; (3) the record demonstrates that plaintiff was not deprived of his due process rights; (4) defendants are entitled to qualified immunity; (5) plaintiff's damages claims are barred under the Eleventh Amendment; (6) defendant Lydell Sherrer had no direct involvement and cannot be held liable under 42 U.S.C. § 1983; (7) plaintiff's rights under the New Jersey Constitution are co-extensive with his rights under the Eighth Amendment and were not violated; (8) plaintiff failed to file a notice of claim as required under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.*; (9) the record demonstrates that plaintiff was not subject to assault and battery; (10) plaintiff has not demonstrated that he suffered sufficient distress to demonstrate intentional infliction of emotional distress; and (11) plaintiff is not entitled to punitive damages.  For the reasons discussed below, the motion for summary judgment is granted as to plaintiff's federal constitutional claims, and this Court declines to exercise jurisdiction over the remaining state law claims.

## II. Factual Background and Procedural History

### A. Defendants' Recitation of Facts

At all times relevant to this litigation, plaintiff was an inmate at Northern State Prison, where he is serving a life sentence. (Defs.' Stmt. Material Facts ¶ 1; Def.'s Dep. 9:6–7.) According to defendants' special investigator, on April 21, 2006, plaintiff had a contact visit with his attorney and then requested a meeting with defendant Lieutenant Pierre R. Emanuel regarding an ongoing dispute about whether plaintiff was entitled to have his eyeglasses, which had been confiscated, returned to him. (Defs.' Stmt. Material Facts ¶¶ 5, 14; Birardi Decl., Ex. A.) Pursuant to prison policy for inmates returning from contact visits, Lieutenant Emanuel ordered plaintiff to undergo a strip search. (Defs.' Stmt. Material Facts ¶ 5; Birardi Decl., Ex. A.) After plaintiff's cuffs were removed for the strip search, plaintiff "became belligerent and

agitated about the disposition of his eyeglasses" and struck defendant Senior Corrections Officer (SCO) Benigno Santiago in the chest. (Defs.' Stmt. Material Facts ¶ 6; Birardi Decl., Ex. A.) SCO Santiago called an emergency code for a fight in progress, and prison officials forcibly restrained plaintiff. (Defs.' Stmt. Material Facts ¶ 7.) They took plaintiff to the nurse's station, where, according to a contemporaneous report by the nurse, plaintiff did not complain about any injuries and the only apparent harm suffered was redness on his neck. (Defs.' Stmt. Material Facts ¶¶ 8–11; Prestien-Lapenta Decl., Ex. A.) Senior Investigator Christopher Birardi investigated the matter and did not find that the officers used excessive force when restraining plaintiff. (Defs.' Stmt. Material Facts ¶¶ 13–15.)

At a subsequent disciplinary hearing, plaintiff was found guilty of assault and threatening another with harm. (Defs.' Stmt. Material Facts ¶¶ 15, 18; Anderson Decl., Ex. A.) Plaintiff appealed the results of the hearing, and Assistant Superintendent Eric Stokes affirmed the hearing officer's determination of guilt. (Anderson Decl., Ex. A.)

### B. Plaintiff's Recitation of Facts

Plaintiff did not file a responsive statement of facts as required by *Local Rule* 56.1. Although this ordinarily means that defendants' statement of facts must be accepted as undisputed, the Rule is relaxed for pro se litigants, and this Court will discern plaintiff's recollection of the facts from his complaint and written submissions. *See Jordan v. AllGroup Wheaton*, 218 F. Supp. 2d 643, 646 n.2 (D.N.J. 2002); *Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001). This Court notes, however, that notwithstanding this procedural relaxation, plaintiff is not entitled to any special deference with regard to the application of the substantive standard for summary judgment.

3

Plaintiff contends that on April 21, 2006, he was placed in a non-contact booth for his meeting with his attorney rather than in one of the "attorney-client conference room[s] designated specifically for legal attorney-client conferences." (Compl. ¶¶ 33–34.) After the meeting, Lieutenant Emanuel ordered two corrections officers to take plaintiff to the officer's lounge through a route not visible by security cameras. (*Id.* ¶ 41.) At least six other officers joined them. (*Id.* ¶ 42.)

According to the complaint, the following occurred: Lieutenant Emanuel ordered SCO Santiago to remove plaintiff's clothes and cuff his hands behind his back. (*Id.* ¶¶ 45, 47.) After plaintiff's clothes were removed and his hands cuffed, Lieutenant Emanuel approached plaintiff and threatened him. (*Id.* ¶¶ 47, 49.) SCO Santiago then struck plaintiff in the face with a closed first, knocking him to the floor. (*Id.* ¶ 50.) Before plaintiff could stand back up, other officers began punching and kicking him in the head and back. (*Id.* ¶ 51.) By the end of the altercation, plaintiff had "sustained kicks to the rib cage, received lacerations to his face and scalp, and numerous bruises and abrasions to his arms, legs, torso, face, and head." (*Id.* ¶ 53.) Although not all the officers present participated, none took any steps to prevent the beating, with the exception of SCO Jeremiah Head, who urged the officers to stop. (*Id.* ¶¶ 54–57.) (In his deposition, SCO Head stated that he has no recollection of this event and does not even know plaintiff. (Head Dep. 20:4–22:16.)) Then the officers took plaintiff to the infirmary. They told the nurse that plaintiff had assaulted an officer, and she responded, "Well I guess he'll be alright then, you guys can take him back wherever he came from!" (*Id.* ¶ 64.) Plaintiff denies ever resisting or threatening the officers. (*Id.* ¶ 73.)

    **C. Procedural History**

4

On June 27, 2007, plaintiff sued Northern State Prison Administrator Lydell Sherrer, the prison nurse whose name plaintiff only knew as "Regina or "Gina," Lieutenant Emanuel, SCO Santiago, SCO Head, and four other corrections officers. Defendants filed an answer on December 12, 2007. After denying defendants' first motion for summary judgment, on May 20, 2010 this Court appointed plaintiff Pro Bono Counsel for the limited purpose of interviewing witnesses and conducting depositions. Discovery continued through January 2011. On January 28, 2011, defendants filed this motion for summary judgment. Plaintiff filed his opposition on May 27, 2011, and on July 13, 2011, this Court granted defendants' ex parte motion to seal plaintiff's response due to the presence of sensitive information in its appendix. Defendants filed a reply brief on June 14, 2011.

After plaintiff filed the appendix containing sensitive information, he reported to this Court on June 27, 2011 that prison officials confiscated all the legal documents from his cell. On July 13, 2011, this Court issued an order to show cause "why plaintiff's legal papers should not be returned to him." Defendants responded with an assurance that plaintiff's papers were returned to him, but on August 11, 2011, plaintiff reported to this Court that many of his documents were still missing. In an order dated September 19, 2011, this Court reserved judgment on the matter because the seizure did not occur until after plaintiff filed his opposition to defendants' motion for summary judgment and therefore did not affect the progress of the litigation at this stage. However, this Court also noted that "when the Court rules on the summary judgment motion, the issue of how plaintiff's allegations of defendants' failure to return his documents bears on the next steps in the parties' dispute will be ripe for addressing."

**III. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support and oppose the claim, parties should "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." *Fed. R. Civ. P.* 56(c)(1)(A). A party may also support or oppose summary judgment by showing that cited materials "do not establish the absence or presence of a genuine dispute." *Fed. R. Civ. P.* 56(c)(1)(B). Because plaintiff is appearing pro se, this Court will consider his written submissions when determining the existence of a disputed issue of material fact. *See, e.g.*, *Jordan*, 218 F. Supp. 2d at 646 n.2; *Longoria*, 168 F. Supp. 2d at 312 n.1. Generally speaking, when a plaintiff appears pro se, his complaint is construed liberally. *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (citing *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009)).

After taking the evidence into account, this Court must determine "whether genuine issues as to material fact exist such that a reasonable jury could return a verdict for the plaintiff." *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011). On disputed issues, this Court must "draw inferences in a light most favorable to the non-moving party." *Id.* (quoting *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002)). Summary judgment will be granted only if the evidence precludes a reasonable jury from finding in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**IV. Discussion**

    **A. Administrative Exhaustion**

Defendants argue that plaintiff's federal claims must be dismissed because he failed to exhaust administrative remedies within the prison system. Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Third Circuit has held that the administrative grievance procedure in the New Jersey Department of Corrections Inmate Handbook qualifies as an "administrative remedy" because it "gives inmates the opportunity to inform the prison administration about any complaints, . . . provides for a written response back to the inmates," and allows the prison to address prisoner concerns without resort to litigation. *Concepcion v. Morton*, 306 F.3d 1347, 1454–55 (3d Cir. 2002).

Plaintiff submitted an "Inmate Remedy System Form" related to the incident at issue in this litigation, but he did not administratively appeal the decision that resulted from that filing. (Defs.' Stmt. Material Facts ¶¶ 30, 32.) That failure notwithstanding, this Court must find for plaintiff on this issue because the record does not explain the appeals procedure in place at the time plaintiff filed his grievance form. Defendants have provided a copy of the "Grievance Procedure" section of the Northern State Prison Inmate Handbook, dated October 2003. (Brooks Decl., Ex. A.) The Handbook does not discuss details of how or whether an inmate may appeal an adverse response to an Inmate Remedy Form. (*Id.*) Defendants also provided a copy of a memorandum to the inmates, dated February 5, 2008, which discusses how and when to appeal. (Brooks Decl., Ex. B.) But that memorandum provides this Court with no information as to the prison's policy on appeals at the time plaintiff filed his Inmate Remedy Form. He filed his form on May 3, 2006, and the memorandum was not issued until over twenty-one months later.

7

(*Compare* Brooks Decl., Ex. B *with* Brooks Decl., Ex. C). Assuming without deciding that this memorandum qualifies as an "administrative remedy" under the PLRA, this Court has no way of knowing whether plaintiff complied with the appeals policy in effect at the time his appeal was due. Accordingly, this Court cannot find as a matter of law that plaintiff failed to exhaust his administrative options.

### B. Eleventh Amendment and Section 1983 Limitations on Official Capacity Claims

#### 1. Official Capacity Claims

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the literal language of the Amendment is narrow, it has been interpreted to provide a broad right of states to avoid being subject to lawsuits in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Typically, this immunity cannot be overcome absent a state's waiver of its immunity or a valid congressional abrogation of states' immunity. *Id.* at 99.

The Eleventh Amendment not only protects the state itself, but it also "bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Id.* at 101 (quoting *Ford Motor Co. v. Dep't of Treas.*, 323 U.S. 459, 464 (1945)). In deciding whether the state is the real, substantial party in interest, "[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Id.* at n.11 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). If a plaintiff sues a state official in his official capacity for a violation of state law, that

suit is also barred. *Id.* at 106. Notwithstanding these limitations, there is no bar to a suit against a state official in his individual capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

Relatedly, when a plaintiff brings an action under 42 U.S.C. § 1983 for deprivation of a federal constitutional right, the action is cognizable only if it is against a "person." The Supreme Court has held that a state officer sued in his or her official capacity is not a "person" for the purposes of section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

In this case, defendant Sherrer and defendant "Medical Nurse 'Regina'/ or 'Gina'" are being sued in their official capacities, as are the John and Jane Does. Defendants Emanuel, Ortiz, Santiago, Crawford, Laraquente, Revez, and Head, however, are being sued only in their individual capacities. Plaintiff's claims are all actionable either under section 1983 or New Jersey law. Because neither the Eleventh Amendment nor section 1983 allows monetary recovery against any of the defendants in their official capacities, summary judgment is granted as to plaintiff's actions against defendants in their official capacities.

**2. Claims Against Defendant Sherrer**

Defendant Lydell Sherrer was the Administrator of Northern State Prison when the alleged attack occurred. (Defs.' Stmt. Material Facts ¶ 3.) In a claim under section 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement" in this context means "allegations of personal direction or actual knowledge and acquiescence." *Id.* Such allegations "must be made with appropriate particularity." *Id.*

Plaintiff's complaint does not allege that Sherrer had any direct involvement in plaintiff's treatment. There is not even so much as a bald allegation that he directed his co-defendants to attack plaintiff. Nor is there an allegation that he knew of or acquiesced to the attack. Indeed, plaintiff actually alleges that after the attack, his attorney sought to contact Sherrer in an effort to remedy the situation. (Compl. ¶ 91.) This would be a curious action for plaintiff to take if he believed that Sherrer had been involved. In the absence of evidence that Sherrer was personally involved, summary judgment is granted as to plaintiff's section 1983 claims against him.

### C. Excessive Force

#### 1. Effect of Prison Disciplinary Proceedings

Defendants argue that this Court may not consider facts or evidence that contradict the prison disciplinary proceedings arising from the same incident. (Defs.' Br. Summ. J. 12.) In *Heck v. Humphrey*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose lawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. 477, 486–87 (1994).

The Court made clear, however, that this requirement applies only when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.

By way of example, the Court explained that if a plaintiff convicted of "intentionally preventing a peace officer from effecting a lawful arrest" brought an action claiming that the seizure was unreasonable, a finding in his favor would negate an element of the offense of which

10

the plaintiff was convicted and could not be permitted under section 1983. *Id.* at 487 n.6. On the other hand, a suit for damages based on an unreasonable search could be permissible despite a criminal conviction because the availability of other doctrines to avoid suppression means that "a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* at 487 n.7.

The Court revisited this holding in *Edwards v. Balisok*, in which plaintiff was found guilty of four prison infractions and then filed a section 1983 action "alleging that the procedures used in his disciplinary proceeding violated his Fourteenth Amendment due process rights." 520 U.S. 641, 643 (1997). The Supreme Court held that plaintiff's section 1983 claim was not cognizable because "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646–47.

In *Concepcion v. Morton*, 125 F. Supp. 2d 111, 123 (D.N.J. 2000), *rev'd on other grounds by* 306 F.3d 1347, Judge Wolfson held that two prisoners' action for excessive force could proceed so long as the court did "not consider evidence that implies that the disciplinary punishments imposed against the plaintiffs are invalid," and that therefore, "any facts used as a basis for plaintiffs' excessive force claims cannot contradict the disciplinary proceedings arising from this same incident." This Court does not believe that Judge Wolfson's holding would wholly bar plaintiff's claims of excessive force as a violation of his Eighth Amendment rights, because as a practical matter, procedure would trump substance to the detriment of critical constitutional safeguards. The Supreme Court never held that parties are collaterally estopped from contesting prison disciplinary findings, but rather that a section 1983 claim cannot be pursued if it would "necessarily imply" that the earlier determination process was invalid.

11

Here, the outcome of the disciplinary hearing was that plaintiff was found guilty of threatening and assaulting a corrections officer. A favorable outcome on plaintiff's lawsuit would not invalidate or draw into question the validity of the disciplinary hearing. To the extent that the issues in this case would overlap with facts that were relevant in the disciplinary hearing, that overlap would not speak to the propriety of the hearing officer's procedures or attack the legitimacy of the hearing officer's legal determination.

That said, to the extent that plaintiff alleges that the prison disciplinary process violated his right to due process, *Heck* and *Edwards* do preclude this Court from reviewing that claim. This Court need not address that question in depth, however, because a close reading of plaintiff's complaint shows that it includes "Denial of Due Process" only as a header to the complaint's recitation of the facts underlying plaintiff's interaction with the disciplinary and grievance processes. (Compl. ¶ 92.) The complaint does not include a due process violation in its detailed list of claims for relief.

### 2. Eighth Amendment

When an inmate alleges that a prison official used excessive and unjustified force, the Eighth Amendment controls. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). At the center of the inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)). To make this determination,

> courts look to several factors including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

12

        *Id.* (quoting *Whitley*, 475 U.S. at 321).

Plaintiff's complaint alleges that a group of prison officials moved him to a location not visible by cameras, threatened him, and proceeded to punch and kick him for no reason related to prison safety. These allegations, left alone, would support a claim for excessive force if the Court were deciding a motion to dismiss. But the Court is not deciding whether plaintiff's complaint sufficiently alleges cognizable claims; the Court is determining if genuine and material factual disputes appear in the record so as to require factfinding. Put simply, plaintiff cannot withstand summary judgment if he is unable to support his allegations with competent evidence, even if the allegations are sufficient to withstand a motion to dismiss.

It is of significance on this point that defendants earlier brought a summary judgment motion that this Court denied because they did not sufficiently support it. [D.E. 49.] The Court appointed counsel to represent plaintiff for the purposes of further discovery by way of a fixed number of depositions. Now, with a more extensive record, defendants have pointed to evidence that corroborates their version of the incident at issue, and plaintiff has filed a 42 page document including a 20 page certification [D.E. 75] in opposition. The question presented is whether his opposing certification is sufficient to withstand defendants' motion.

Plaintiff's opposition is detailed and establishes his grasp of the law and his assessment of the defendants' responses during the depositions. He cites the controlling standard of review and understands the nature of this motion. But plaintiff fails to put forth any evidence to suggest a disputed question of material fact other than the same assertions he first set forth in his complaint. He opens his argument (because this is what he has submitted, as opposed to giving factual support) by complaining that his assigned counsel was "prevented, through defendant's

13

obstruction of justice scheme, from complying with the limited capacity appointment" because counsel did not interview the nurse whom plaintiff now identifies as having treated him after the incident. (Pl.'s Cert. Opp. 3.) Plaintiff's point is not that the nurse was inaccessible to him, but rather that defendants failed to identify the nurse to whom plaintiff was referring when he provided an incorrect recollection of her name and a description of her as a "light skin, overweight, African American female." (*Id.*) Defendant makes this argument even though, prior to filing his opposition, neither he nor his appointed counsel ever informed the Court that a second nurse might need to be deposed. Moreover, the nurse that defendants offered for deposition, Nona McGinnis, is the nurse whose name appeared on plaintiff's medical report from the day in question (Prestien-Lapenta Decl., Ex. A), which makes her testimony germane. Plaintiff also argues that discovery should be re-opened more generally; in particular, he urges this Court to allow him to take a lie detector test to show his truthfulness. (*Id.* at 6–7.)

      As far as actually putting facts in dispute, plaintiff does nothing more than repeatedly challenge defendants' credibility and defendants' counsel's integrity. For example, he complains that defendants' description of the facts reflects only that the incident occurred while he was returning from "a contact visit" rather than a visit with his attorney. (*Id.* at 7.) Defendants do not deny that plaintiff was meeting with his attorney on the day in question, and during the course of discovery, defendants' counsel acknowledged that there are no records regarding that visit and whether it was a contact or non-contact visit. (*Id.* at 8.) Plaintiff calls this acknowledgement "deceitful" and an effort to hide evidence of a "flagrant violation of plaintiff's attorney-client privilege communication." (*Id.* at 9.)

      When plaintiff finally addresses defendants' recounting of the assault, he simply states, "Obviously, this allegation by defendant could not be further from the truth" because "it is

14

crystal clear that plaintiff could have never stricken Officer Santiago as falsely alleged while at same with hands cuffed on his back." (*Id.* at 12.) (This rebuttal ignores that the prison report on the incident explicitly states that plaintiff's handcuffs were removed prior to his attack on SCO Santiago. (Birardi Decl., Ex. A.)) Plaintiff emphasizes "the mysterious disappearance of surveillance tape," arguing that it "defies all logic" that the prison would not have saved the tape because defendants acknowledge that prison practice is to keep records of "unusual incident[s]." (*Id.* at 12–13.) Rather than accept the explanation that the prison did not consider the event to be unusual, plaintiff posits that this action is "another obstruction of justice act" on defendants' part. (*Id.* at 13.) When addressing the specific legal arguments on which defendants seek dismissal, plaintiff does not refer to the discovery record and instead recounts his own recollections and repeatedly advocates that summary judgment be denied "in the best interest of justice." (*Id.* at 14–20.)

As plaintiff makes clear, disputed facts can only be found upon a finding that defendants—and all the prison officials for that matter—lack credibility. (*See id.* at 6, 10, 13.) Every time that defendants have come forth with testimony or other evidence to support their position, plaintiff's reliable response is to accuse them and the entire prison system of fabricating or withholding evidence to further the conspiracy to conceal what happened to him. These protests notwithstanding, plaintiff has failed "to provide a scrap of evidentiary material to support" his recollection of events, and "[t]he bare-bones allegations in [his] brief and pleadings are insufficient to withstand summary judgment" because "[a] party opposing a motion for summary judgment must counter with a properly supported motion with specific, factual disputes: Mere general allegations are not sufficient." *Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 113 (5th Cir. 1986); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288

15

(1968) ("[A] party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him.").

This is not a reasonable doubt case, where plaintiff stands a chance if he pokes holes in a version of an incident that defendants are trying to prove. Quite the opposite: plaintiff has the burden, by a preponderance of the evidence, to prove that what he claims occurred is more likely true than not true. A flat-out swearing contest will not achieve this; plaintiff must tip the scales. With no evidence to put on his side, he does not meet the burden and his claims of excessive force are subject to dismissal.

Plaintiff also asserts claims for failure to protect, *see Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009), and for retaliation, *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). These claims rely on the same facts as plaintiff's excessive force claim, and defendants' motion for summary judgment against these claims is therefore granted. Because plaintiff's claims fail on the merits, there is no need to discuss whether defendants are entitled to qualified immunity.

### D. State Law Claims

In addition to his section 1983 claims, plaintiff has alleged that defendants violated his rights under Article I of the New Jersey Constitution and that they are liable under New Jersey law for assault, battery, and intentional infliction of emotional distress. This Court had jurisdiction over plaintiff's section 1983 claims pursuant to federal question jurisdiction. *See* 28 U.S.C. § 1331. Having dismissed all of plaintiff's claims under federal law, this Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 445 (3d Cir. 1997) (whether to exercise supplemental jurisdiction after dismissing federal claims "is committed to the sound discretion of the district court").

**V. Conclusion**

For the foregoing reasons, defendants' motion for summary judgment is granted, this Court declines to exercise supplemental jurisdiction over the state law claims, and the case is dismissed. An appropriate order will be entered.

/s/ Katharine S. Hayden

September 30, 2011                                                                          Katharine S. Hayden, U.S.D.J.